UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| J & J SPORTS PRODUCTIONS, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 17-cv-1960 |
| | : | |
| ANTHONY J. MAGLIETTA and | : | |
| MOLLY'S PUB, INC., | : | |
| | : | |
| Defendants. | : | |

## O P I N I O N
**Plaintiff's Renewed Motion for Default Judgment, ECF No. 17—Granted**

**Joseph F. Leeson, Jr.**                                                    **June 11, 2019**
**United States District Judge**

## I.     BACKGROUND

Plaintiff J & J Sports Productions, Inc. is an international distributor of sports and

entertainment programming. J & J secured the domestic commercial exhibition rights to

broadcast the "The Fight of the Century" Floyd Mayweather, Jr. v. Manny Pacquiao

Championship Fight Program, telecast nationwide on Saturday, May 2, 2015.[1] Complaint ¶ 16,

ECF No. 1; Gagliardi Affidavit ¶ 3, ECF No. 14-2. J & J entered sublicensing agreements with

various commercial establishments—such as bars, restaurants, and hotels—to permit the public

exhibition of J & J's broadcast of the fight. Complaint ¶ 17; Gagliardi Affidavit ¶ 3. The

---

[1]     The fight was a "massive success for promoters" and pulled in $410 million in pay-per-view purchases. Dan Gartland, *Who Won the Mayweather vs. Pacquiao Fight in 2015? Reviewing Floyd's Last Big Bout*, SI.COM (Aug. 25, 2017), https://www.si.com/boxing/2017/08/25/floyd-mayweather-manny-pacquiao-fight-2015-result. Mayweather won by unanimous decision after twelve rounds, but "spent much of the fight ducking, dodging and blocking Pacquiao's punches"; his "defensive strategy left many viewers disappointed." *Id.*

interstate transmission of the fight was encrypted and made available only to J & J's customers, commercial locations that paid the requisite closed-circuit commercial license fees to show the J & J broadcast. Gagliardi Affidavit ¶ 9.

J & J alleges that Defendants Anthony J. Maglietta and Molly's Pub, Inc., unlawfully intercepted, received, and exhibited the J & J broadcast at Molly's Pub, a commercial establishment operated by Defendants and located at 253 East Chestnut Street, Lancaster, Pennsylvania. Complaint ¶ 19. J & J's investigator, Sean L. Hall, visited Molly's Pub on the night of the fight. He reports that he paid no cover at Molly's and that there was a single television in the bar. He spoke to a patron who stated he did not know whether the bar would be showing the Mayweather-Pacquiao fight. Hall states that Maglietta was working at the time and that Maglietta tried to order the fight on pay-per-view, but could not do so. He left the bar area and returned with another cable box, which he switched with the existing cable box in the bar, and purchased the fight on pay-per-view. Hall counted the number of patrons in the bar three separate times during his visit, yielding twenty, twenty-two, and twenty-six patrons. Hall Affidavit, ECF No. 17-3. J & J asserts that Defendants did not lawfully license the broadcast for public display. Gagliardi Affidavit ¶ 7.

J & J filed its Complaint on April 27, 2017, bringing claims against Defendants under the Communications Act of 1934, 47 U.S.C. § 605, and the Cable & Television Consumer Protection and Competition Act of 1992, 47 U.S.C. § 553. Defendants were served on September 29, 2017. ECF Nos. 11, 12. The Defendants did not respond to the Complaint or otherwise appear and default was entered against Defendants on October 23, 2017.

J & J filed its original Motion for Default Judgment on December 20, 2018. ECF No. 14. The Court denied the original motion without prejudice to refile pending the outcome of the

appeal from the District Court's order in *J & J Sports Productions, Inc. v. Ramsey*, No. CV 17-1942, 2017 WL 4287200, at *1 (E.D. Pa. Sept. 27, 2017). ECF No. 16. Following the decision of the Third Circuit Court of Appeals in *Ramsey*, *see J & J Sports Productions, Inc. v. Ramsey*, 2018 WL 6505928 (3d Cir. Dec. 11, 2018), J & J filed a Renewed Motion for Default Judgment, ECF No. 17.

## II. LEGAL STANDARD

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Once the Clerk enters default, if the claim is not for a sum certain as contemplated by Federal Rule 55(b)(1), then "the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2); *see also Phoenix Ins. Co. v. Small*, 307 F.R.D. 426, 433 (E.D. Pa. 2015). In reviewing a motion for default judgment,

> [t]he court's initial inquiry is "whether the unchallenged facts constitute a legitimate cause of action." 10A Charles Alan Wright, Arthur R. Miller, et al., *Federal Practice and Procedure* § 2688 (3d ed. 2013) (citing cases). As at the motion to dismiss stage, the court accepts as true the well-pleaded factual allegations in the plaintiff's complaint, except those relating to damages, as though they were admitted or established by proof, *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990), as well as all reasonable inferences that can be drawn from the complaint, *e.g., Yang v. Hardin*, 37 F.3d 282, 286 (7th Cir. 1994). Conclusory allegations and the parties' legal theories or "conclusions of law" are not entitled to the same presumption and are not deemed admitted. Wright & Miller, *supra*, § 2688.

*Joe Hand Promotions, Inc. v. Yakubets*, 3 F. Supp. 3d 261, 270-71 (E.D. Pa. 2014) (footnotes omitted).

"If the court determines that the plaintiff has stated a cause of action, it must then assess damages." *Id.* "The court must 'conduct an inquiry in order to ascertain the amount of damages with reasonable certainty.'" *Spring Valley Produce, Inc. v. Stea Bros.*, No. CIV.A. 15-193, 2015

WL 2365573, at *3 (E.D. Pa. May 18, 2015) (quoting *Star Pacific Corp. v. Star Atlantic Corp.*, 574 Fed. App'x. 225, 231 (3d Cir. 2014)). Rule 55(b)(2) provides that the court "may conduct hearings" when it needs to determine the amount of damages. However, "[i]f the court can determine the amount of damages to be awarded based on affidavits or other evidentiary materials, '[t]he Court is under no requirement to conduct an evidentiary hearing with testimony.'" *Id.* at 271 n.8 (quoting *E. Elec. Corp. of N.J. v. Shoemaker Constr. Co.*, 657 F. Supp. 2d 545, 552 (E.D. Pa. 2009)).

"It is well settled in this Circuit that the entry of a default judgment is left primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984). "Three factors control whether a default judgment should be granted: (1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000).

## III.     ANALYSIS

### A.  J & J has stated a claim under 47 U.S.C. § 553 against both Defendants.

J & J brought this action pursuant to 47 U.S.C. §§ 553 and 605. Both statutes "prohibit the unauthorized interception and exhibition of communications." *J & J Sports Prods., Inc. v. Cruz*, No. 14-2496, 2015 WL 2376051, at *2 (E.D. Pa. May 18, 2015). However, a "[plaintiff] may not recover under both § 605 and § 553[.]" *J & J Sports Prods., Inc. v. 4326 Kurz, Ltd.*, No. CIV.A. 07-3850, 2008 WL 4630508, at *3 (E.D. Pa. Oct. 17, 2008). Sections 605 and 553 provide alternative forms of relief depending on how the interception takes place; "relief under § 605 is available if there is an interception of satellite transmissions, and relief under § 553 is

available if there is an interception of the transmissions after they reach the cable system." *Id.* (citing 47 U.S.C. §§ 553, 605).

Courts operate with a presumption in favor of § 553 at the default judgment stage where the plaintiff produces no evidence of an interception of satellite, as opposed to cable, transmissions. *See Joe Hand Promotions, Inc. v. Yakubets (Yakubets I)*, No. CIV.A. 12-4583, 2013 WL 5224123, at *5 (E.D. Pa. Sept. 17, 2013) ("[T]he presumption that § 553 applies absent any evidence of interception by satellite is a more principled approach."). J & J recognizes this preference and requests default judgment under § 553.

Under § 553, "[n]o person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so[.]" 47 U.S.C. § 553(a)(1). A plaintiff must satisfy three elements to establish that a defendant violated § 553: (1) interception of a satellite transmission or broadcast, (2) lack of authorization, and (3) publication. *J & J Sports Prods., Inc. v. Ramsey*, 757 F. App'x 93, 95 (3d Cir. 2018) (citing 47 U.S.C. §§ 553(a), 605(a)).

J & J has alleged sufficient facts to hold Molly's Pub, Inc., liable for violating § 553. J & J alleges that it held the exclusive nationwide commercial distribution rights to the telecast of the Mayweather-Pacquiao fight and entered sublicensing agreements with various commercial establishments to allow them to publicly show the fight broadcast. J & J alleges that the Defendants intercepted and broadcast the Mayweather-Pacquiao fight at Molly's Pub without entering a sublicensing agreement, and thus without authorization.

Additionally, J & J has established Defendant Maglietta's personal liability. In certain circumstances, individuals may be held vicariously liable for a violation of § 553. *See J & J Sports Prods., Inc. v. Smalls*, No. CV 16-4883, 2017 WL 4680612, at *2 (E.D. Pa. Oct. 18,

2017). A plaintiff must show that the individual "(1) has the right and ability to supervise the violative activity, although he need not actually be supervising, because he need not know of the violative activity, and (2) has a direct financial interest in the violation, *i.e.*, financial benefits, even if not proportional or precisely calculable, that directly flow from the violative activity." *See Joe Hand Promotions, Inc. v. Yakubets* (*Yakubets II*), 3 F. Supp. 3d 261, 277 (E.D. Pa. 2014) (applying test to § 553). "Conclusory allegations on information and belief will generally not be enough, even at the default judgment stage, to allow the imposition of vicarious liability." *Joe Hand Promotions, Inc. v. Howell*, No. CV 18-02318, 2019 WL 1791416, at *3 (E.D. Pa. Apr. 24, 2019) (quotations omitted) (holding that allegations that defendant leased the liquor license for property where Mayweather-Pacquiao fight was pirated were insufficient to show a direct financial interest in the alleged violation).

J & J has shown that Maglietta had the right and ability to supervise the violative activity, and in fact that he performed the violative activity himself. J & J's investigator states in his affidavit that Maglietta retrieved the second cable box and ordered the fight on pay-per-view to show in the bar. J & J has also shown that Maglietta had a direct financial interest in the violation. J & J attaches the results of a corporate registration search for Molly's Pub, Inc., which list Anthony Maglietta as the president. Ex. 2 to Declaration of Thomas P. Riley, ECF No. 17-2. J & J also presents the results of a search on the website of the Pennsylvania Liquor Control Board which list Anthony J. Maglietta as the Manager/Steward, President, Stockholder, Director, and Secretary/Treasurer for Molly's Pub, Inc. Ex. 1 to Declaration of Thomas P. Riley, ECF No. 17-2. The court in *Yakubets II* found that these exact titles listed on a liquor license adequately established an individual defendant's financial interest in a violation to establish vicarious liability. 3 F. Supp. 3d at 301 ("Cafe Nostalgie's liquor license—not the fact of the liquor

license, but what it specifically states about Mr. Yakubets's role—fills an otherwise empty allegation made on information and belief with such factual content as permits the inference of Mr. Yakubets's right and ability to supervise paired with a direct financial benefit."). J & J can hold Maglietta personally liable for the violations.

Accordingly, J & J has stated claims against both Molly's Pub, Inc., and Maglietta under § 553.

**B. J & J is entitled to a default judgment.**

Where jurisdiction exists and Plaintiff has stated a claim, three factors guide whether default judgment should be granted: (1) whether the plaintiff will be prejudiced if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct. *See Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000) (citing *United States v. $ 55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984)).

Application of the *Chamberlain* factors supports entry of default judgment. First, denying the motion will prejudice J & J. "Considerable delays," especially those that might "stretch on indefinitely," prejudice a plaintiff's ability to effectively pursue its claim. *Grove v. Rizzi 1857 S.P.A.*, No. 04-2053, 2013 WL 943283, at *2 (E.D. Pa. Mar. 12, 2013). Second, the Court may presume that an absent defendant who has failed to answer has no meritorious defense, *see, e.g., Doe v. Simone*, No. 12–5825, 2013 WL 3772532, at *5 (D.N.J. July 17, 2013), because "[i]t is not the court's responsibility to research the law and construct the parties' arguments for them." *Yakubets II*, 3 F. Supp. 3d at 271–72 (quoting *Econ. Folding Box Corp. v. Anchor Frozen Foods Corp.*, 515 F.3d 718, 721 (7th Cir. 2008)). Third, the Defendants' failure or refusal to "engage[ ] in the litigation process and [to] offer[ ] no reason for this failure or refusal" may

"qualif[y] as culpable conduct with respect to the entry of a default judgment." *Yakubets II*, 3 F. Supp. 3d at 272 (citing *E. Elec. Corp. of N.J. v. Shoemaker Constr. Co.*, 657 F. Supp. 2d 545, 554 (E.D. Pa. 2009)).

J & J is entitled to a default judgment against both Defendants. The Court must next determine the appropriate amount of damages.

## C. Amount of Damages

An aggrieved party under § 553 is entitled to actual or statutory damages. Under § 553(c)(3)(A), statutory damages between $250 and $10,000 may be awarded as the court considers just. Such damages should be calculated based solely on an estimate of actual damages, without considering deterrence. *See Yakubets II*, 3 F. Supp. 3d at 277 (citing *Charter Commc'ns Entm't I, DST v. Burdulis*, 460 F.3d 168, 181–83 (1st Cir. 2006)).

Section § 553 also provides for enhanced damages in the court's discretion of up to $50,000 if the violation was committed "willfully" and "for purposes of commercial advantage or private financial gain," 47 U.S.C. § 553(c)(3)(B). "[W]illfulness for purposes of § 553(c)(3)(B)'s enhanced damages requires both the defendant's intentional signal interception as well as knowledge of or reckless disregard as to the unlawfulness of its signal interception." *Yakubets II*, 3 F. Supp. 3d at 284; *Martinez*, 2014 WL 5410199, at *8. "[C]ourts have repeatedly found that the mere act of piracy itself evidences intent because in order for a closed circuit broadcast to be intercepted, the interceptor has to engage in some deliberate act; it is virtually impossible to do so accidentally." *Martinez*, 2014 WL 5410199, at *8.

J & J requests $7,500 in statutory damages and $22,500 in enhanced statutory damages. Mot. 10. J & J argues that statutory damages should not only estimate actual damages, but incorporate the need to deter future piracy of cable programming. J & J has made this argument

before at least two judges of this District in previous cases, and both judges rejected it.

Analyzing § 605's analogous damages provision, Chief Judge Sanchez concluded that "Congress did not intend that a deterrence factor be part of the calculation for statutory damages," but rather, "according to the plain language of the statute, statutory damages are merely an alternative to actual damages. The Court should not double count deterrence by considering it first in an actual or statutory damages award and then again into an enhanced damages award." *J & J Sports Prods., Inc. v. Cruz*, No. CIV.A. 14-2496, 2015 WL 2376051, at *4 (E.D. Pa. May 18, 2015). Instead, a court should calculate statutory damages based on a calculation of actual damages without considering deterrence. *Id.* In *J & J Sports Prods., Inc. v. Chauca*, Judge Smith agreed with Judge Sanchez and concluded that "deterrence is not a proper consideration for calculating statutory damages." No. CV 14-6891, 2015 WL 7568389, at *7 (E.D. Pa. Nov. 25, 2015). Instead, the court should estimate actual damages and consider: (1) the amount the defendant would have paid had he obtained a lawful license and (2) any profits the defendant made that are attributable to the violation. *Id. See also Ramsey*, 2017 WL 4287200, at *2 (calculating statutory damages based on estimated actual damages).

J & J charged $3,000 for a commercial sublicense to show the fight, *see* Affidavit of Joseph Gagliardi ¶ 8, ECF No. 14-2. The Court finds no evidence of profits by Molly's Pub attributable to the violation.[2] Therefore, the Court will award $3,000 in statutory damages. *See*

---

[2]     In calculating the defendant's profits, the Court should consider:

> (1) the size of the establishment; (2) the number of patrons at the establishment, taken, to the extent possible, as the number of patrons present because of the interception (to which evidence of advertising to attract customers may be relevant); (3) the number, size, and position of screens displaying the broadcast (a factor to be considered in conjunction with (1) and (2) as an indication of who might be there specifically to watch); (4) any cover charge levied because of the interception; (5) what additional money patrons spent because of the

*Ramsey*, 2017 WL 4287200, at *2 (awarding statutory damages equal to $9,000 licensing fee); *Chauca*, No. CV 14-6891, 2015 WL 7568389, at *8 (awarding J & J statutory damages equal to its lost licensing fee plus defendant's profit from cover charges); *Cruz*, No. CIV.A. 14-2496, 2015 WL 2376051, at *4 (awarding statutory damages equal to $2,200 licensing fee plus estimated profits).

As far as enhanced damages, courts within the Third Circuit apply two predominant methods in calculating the proper amount. *Joe Hand Promotions, Inc. v. Michelina Enterprises, Inc.*, No. 3:16-CV-01880, 2017 WL 3581674, at *4 (M.D. Pa. Aug. 18, 2017). Some courts apply a multiplier of at least three to six times the award of statutory or actual damages. *See, e.g., Yakubets II*, 3 F. Supp. 3d at 291 (multiplier of three); *Cruz*, 2015 WL 2376051, at *7 (same). Other courts weigh a list of non-exhaustive factors to assess the amount of enhanced damages warranted in a particular case, such as "(1) whether the defendant has intercepted unauthorized broadcasts repeatedly and over an extended period of time; (2) whether it reaped substantial profits from the unauthorized exhibition in question; (3) whether the plaintiff suffered significant actual damages; (4) whether the defendant advertised its intent to broadcast the event; and (5) whether the defendant levied a cover charge or significant premiums on its food and drink because of the broadcast." *Michelina Enterprises*, 2017 WL 3581674, at *4 (citing *Joe*

---

interception (i.e., the amounts spent by those who otherwise would not have come, plus any other premiums or greater spending by those who would have come anyway); and (6) any such other factors as may appear relevant in the case before the court.

*Chauca*, No. CV 14-6891, 2015 WL 7568389, at *7 (citing *Yakubets II*). J & J's investigator estimated the number of patrons at Molly's as twenty, twenty-two, twenty-six at different points in the evening. He reported that Molly's was not charging a cover, showed the fight on a single television, and that at least one patron was unaware of whether the bar planned to show the fight.

*Hand Promotions, Inc. v. Waldron*, No. CIV. 11-849 RBK/KMW, 2013 WL 1007398, at *7

(D.N.J. Mar. 13, 2013)).

Judge Kearney found that a multiplier was not appropriate in *Ramsey* in the absence of

evidence of actual damages or other intercepted broadcasts. *Ramsey*, 2017 WL 4287200, at *3.

In *Ramsey*, the court found willfulness based on evidence of advertisements that the defendant

venue would be showing the fight and that two hundred people attended and each paid a twenty-

dollar cover charge. *Id.* The court awarded enhanced damages equal to one-third of the statutory

damages. *Id.*

Judge Robreno also declined to apply a multiplier in *J & J Sports Prods., Inc. v. Hackett*,

finding that even a small multiplier of three would cause "extreme hardship" to the defendant, a

small business. 269 F. Supp. 3d 658, 666 (E.D. Pa. 2017). In that case, J & J sought to recover

against a bar that showed a televised boxing match using a residential license instead of a

commercial license. J & J's investigator reported that there was no cover charge to view the

match and that he observed at most sixteen patrons in the bar, which had a capacity of about

ninety people. *Id.* at 665-66. Based on these facts, Judge Robreno awarded $500 in enhanced

damages, finding that that amount "appropriately balances the need for deterrence against

potential harm to Defendant All Star Sports Bar's business from the imposition of significant

damages." *Id.* at 666. *See also Joe Hand Promotions, Inc. v. Howell*, No. CV 18-02318, 2019

WL 1791416, at *5 (E.D. Pa. Apr. 24, 2019) (awarding $5,200 in statutory damages and an equal

amount in enhanced damages where multiplier of three would result in "gross

overcompensation," defendant was not a repeat offender and showed the fight on a single TV,

and did not appear to profit from showing the fight).

The Court finds a multiplier similarly inappropriate here. The record reveals no evidence that Defendants have a history of intercepting broadcasts, which is a primary consideration under both methods of calculating enhanced damages. *See Yakubets II*, 3 F. Supp. 3d at 277; *Michelina Enterprises*, 2017 WL 3581674, at *4. Nor does the record reveal that Defendants profited significantly by showing the fight, charged a cover, or publicized that they would be showing the fight. Like J & J's investigator in *Hackett*, the investigator here observed a comparatively small number of patrons at Molly's when the fight was shown. Based on the circumstances of the violation, the Court exercises its discretion and awards enhanced damages of $1,000, equal to one-third of the amount of statutory damages. As Judge Roberno found under similar circumstances in *Hackett*, the Court finds that this amount balances the need for deterrence with the potential for harm to a small business caused by significant damages.

Defendants will be jointly and severally liable for both the statutory and enhanced damage awards. Previous courts that found individual defendants vicariously liable have held them jointly and severally liable only for statutory or actual damages, and not enhanced damages, absent evidence that the individual defendant personally participated in or authorized the violation. The court in *Yakubets II* recognized that enhanced damages under § 553 are not true damages, but rather penalties aimed to deter and which depend on willfulness. 3 F. Supp. 3d at 302. Thus, although an individual defendant can be liable for actual damages under § 553 based on the "right and ability to supervise," which requires no knowledge of a violation, an individual defendant should not be held liable for enhanced damages without evidence of personal involvement in willful infringement. *Id. See also Cruz*, 2015 WL 2376290, at *5 (holding individual defendant liable only for statutory damages where J & J did not establish that she personally intercepted program or had knowledge of interception); *Hackett*, 269 F. Supp. 3d

at 667 (declining to impose joint liability for enhanced damages on individual defendant absent evidence that he directed employees to intercept program or otherwise knew of interception).

In this case, however, J & J has shown Defendant Maglietta's personal participation in a willful violation. J & J's investigator stated that Defendant Maglietta personally replaced the cable box in the bar and ordered the fight on pay-per-view. Joint and several liability is therefore appropriate as to both statutory and enhanced damages.

### D.  J & J is granted leave to request costs and attorneys' fees.

"The court *may* direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." 47 U.S.C. § 553(c)(2)(C) (emphasis added). An award of attorneys' fees and costs under § 553 is discretionary rather than mandatory. *Yakubets II*, 3 F. Supp. 3d at 302 (citing cases). J & J will have fourteen days from the date of the order entering judgment to submit evidence of reasonable costs and attorneys' fees. J & J should bear in mind that a plaintiff "bears the burden of producing sufficient evidence of what constitutes a reasonable market rate for the essential character and complexity of the legal services rendered in order to make out a prima facie case." *J & J Sports Prods., Inc. v. Puentenueva*, No. CIV.A. 14-3226, 2014 WL 7330477, at *3 (E.D. Pa. Dec. 22, 2014) (citing *Smith v. Phila. Hous. Autho.*, 107 F.3d 223, 225 (3d. Cir. 1997)).

## IV.    CONCLUSION

For the reasons discussed above, the Court grants J & J's renewed motion for default judgment and grants judgment against both Defendants, jointly and severally, in the amount of $4,000. A separate order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge