UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

J & J SPORTS PRODUCTIONS, INC., :
:
              Plaintiff, :
:
              v. : No. 5:17-cv-1960
:
ANTHONY J. MAGLIETTA and :
MOLLY'S PUB, INC., :
:
              Defendants. :
_____

**O P I N I O N**
Plaintiff's Motion for Attorneys' Fees and Costs, ECF No. 20—Granted, in part
Plaintiff's Motion to Alter or Amend Judgment, ECF No. 21—Denied

**Joseph F. Leeson, Jr.**                                                                          December 18, 2019
**United States District Judge**

## I.     BACKGROUND

This is an action brought pursuant to the Communications Act of 1934, 47 U.S.C. § 605, *et seq*., and the Cable & Television Consumer Protection and Competition Act of 1992, 47 U.S.C. § 553, *et seq*., for the unlawful interception and exhibition of a boxing match on May 2, 2015. Plaintiff J & J Sports Productions, Inc. was granted exclusive nationwide commercial distribution rights to *"The fight of the Century" Floyd Mayweather, Jr. v. Manny Pacquiao Championship Fight Program* (hereafter, "the Program"), and subsequently entered into sublicensing agreements with various commercial entities (hotels, bars, casinos, etc.) for the Program's exhibition on May 2, 2015. Defendants Molly's Pub, Inc. and its agent Anthony Maglietta did not have a sublicense agreement with J & J for the exhibition of the Program, nonetheless they intercepted and exhibited the Program the night of its broadcast to between twenty and twenty-six patrons of Molly's Pub. *See generally* Plaintiff's Complaint, ECF No. 1.

J & J commenced this action for the Defendants' unauthorized exhibition of the Program under the above-mentioned telecommunications statutes on April 27, 2017. *See* ECF No. 1. After the Defendants failed to answer or otherwise appear in this action, J & J moved for entry of default judgment, asking for $7,500 in statutory damages and $22,500 in enhanced damages. *See* Mot. for Def. Judg., ECF No. 17. In an Opinion and Order dated June 11, 2019, this Court granted J & J's motion for entry of default judgment and awarded J & J $3,000 in statutory damages and $1,000 in enhanced damages, pursuant to 47 U.S.C. § 553. *See* Def. Judg. Opn., ECF No. 18; Def. Judg. Order, ECF No. 19. The Court further granted J & J leave to submit an application for attorneys' fees and costs, provided the application was filed within fourteen days of the Court's Opinion and Order.

On June 25, 2019, J & J filed a timely motion for attorneys' fees and costs, seeking $5,976.00 in attorneys' fees and $1,389.28 in costs. *See* Fee Mot., ECF No. 20; Fee Mem., ECF No. 20-1; Riley Decl., ECF No. 20-2. Shortly thereafter, on July 9, 2019, J & J filed a motion to alter or amend judgment pursuant to Federal Rule of Civil Procedure 59(e). In this motion, J & J asks the Court for damages in the amount originally sought in its motion for entry of default judgment—$7,500 in statutory damages and $22,500 in enhanced damages, rather than $3,000 in statutory damages and $1,000 in enhanced damages, as awarded—based on several alleged errors in the Court's reasoning. *See* Mot. to Amend, ECF No. 21; Mem. to Amend, ECF No. 21-1. Neither Defendant has responded to either motion despite being properly served both.

For the reasons set forth below, J & J's motion for attorneys' fees and costs is granted, in part, and its motion to amend or alter this Court's previous award of damages is denied.

## II. MOTION FOR ATTORNEYS' FEES AND COSTS

Pursuant to 47 U.S.C. § 553(c)(2)(C), "[t]he court may direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." J & J seeks an award of attorneys' fees in an amount of $5,976.00 and an award of costs in an amount of $1,389.28. Its motion is supported by a declaration of Thomas P. Riley, counsel of record for J & J, in which Mr. Riley states that he billed at an hourly rate of $500, administrative assistants involved in this case billed at a rate of $100 per hour, and his firm's research attorney, also involved in this case, billed at a rate of $300 per hour. Riley Decl. ¶ 5. With this declaration are contemporaneous billing records as well as a breakdown of the billing based on the timekeeper. This breakdown shows the requested fee award of $5,976.00 is comprised of 2.75 hours of work billed by Mr. Riley at his $500 per hour rate, 10.01 hours of work billed by administrative assistants at the $100 per hour rate, and 12.0 hours billed by the research attorney at the $300 per hour rate. *Id.*, Ex. 1 at 4. With respect to J & J's request for costs, to the declaration of Mr. Riley is attached a breakdown of expenses, showing as follows: $650 for "Investigate Expense;" $28.18 for "Courier Charges;" $400 for the "Complaint Filing Fee;" $31.10 for "Photocopies Charges;" $95.00 and $35.00 for "Service of Process Fees;" and an additional $150.00 for a "Sheriff Service Fee." *Id*. In support of these figures is documentation of a $650 fee from "Lancaster Detective Agency, Inc." for investigative services, *id.*, Ex. 3; as well as documentation showing expenses associated with service of process, *id*. Ex 4.

### A. Legal Standard

"Generally, courts use the 'lodestar' method in evaluating a fee application. . . . Under the lodestar method, [an] attorney's reasonable hourly rate is multiplied by the number of hours

the attorney reasonably spent working on a matter." *A.B. by & through F.B. v. Pleasant Valley Sch. Dist.*, No. 3:17-CV-02311, 2019 WL 2715681, at *2 (M.D. Pa. June 28, 2019) (quoting *D.O. ex rel. M.O. v. Jackson Twp. Bd. of Educ.*, No. CV 17-1581, 2019 WL 1923388, at *2 (D.N.J. Apr. 30, 2019)). The resulting figure "is presumed to be [a] reasonable fee." *Pleasant Valley Sch. Dist.*, 2019 WL 2715681, at *2; *Rayna P. v. Campus Cmty. Sch.*, 390 F. Supp. 3d 556, 561 (D. Del. 2019).

With respect to whether the fee applicant has billed at "a reasonable hourly rate," such a rate is generally "calculated according to the prevailing market rates in the relevant community." *Maldonado v. Houstoun,* 256 F.3d 181, 184 (3d Cir. 2001); *see J & J Sports Prods., Inc. v. TCOS Enterprises, Inc.*, No. CIV.A. 10-7130, 2012 WL 1361655, at *2 (E.D. Pa. Apr. 19, 2012) ("In determining the prevailing market rate, a court must consider the rates charged 'in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" (quoting *Rode v. Dellarciprete,* 892 F.2d 1177, 1183 (3d Cir. 1990))).

### B. Application to J & J's Motion

Having reviewed the contemporaneous billing records submitted by J & J's counsel, the Court finds the time billed—24.76 hours in total, *see* Riley Dec., Ex. 1—and the specific tasks for which that time was billed, to be reasonable in light of the requirements of this case. Moreover, the Court finds that the hourly rates at which the three participants of counsel's firm billed—$500 for Mr. Riley, $300 for the research attorney, and $100 for the administrative assistants, *see id*.—were also reasonable in light of each individual's qualifications and the "market rates in the relevant community." *Maldonado*, 256 F.3d at 184. Specifically, Mr. Riley is an attorney specializing in telecommunication matters with over twenty-five years of

experience.  *See* Riley Decl. ¶¶ 3-4.  His hourly rate of $500 is reasonable in light of the hourly rates in this market for similar services.[1]  *See, e.g.*, *J&J Sports Prods., Inc. v. Allen,* No. CV 17-4046, 2018 WL 1307880, at *5 (E.D. Pa. Mar. 13, 2018) (finding that, in a similar telecommunications case with Mr. Riley as counsel for J & J, the "billed hourly rates of J&J's national ($500) and local ($400) counsel are reasonable for attorneys of their experience in this District"); *J&J Sports Prods., Inc. v. Ramsey*, No. CV 17-1942, 2017 WL 4287200, at *3 (E.D. Pa. Sept. 27, 2017) ("The billed hourly rates of Plaintiff's national ($450) and local ($400) counsel are reasonable for attorneys of their experience in this District."), *aff'd*, 757 F. App'x 93 (3d Cir. 2018).  Similarly, counsel's research attorney has been practicing law for over twenty-four years, and his hourly rate of $300 is reasonable.  *Cf. Keister v. PPL Corp.*, 257 F. Supp. 3d 693, 702 (M.D. Pa. 2016) (finding $275 to be a reasonable hourly rate in 2016 in the Middle District of Pennsylvania for an experienced employment law attorney), *aff'd*, 677 F. App'x 63 (3d Cir. 2017); *Chaney v. HVL, LLC*, No. CIV.A. 11-0833, 2012 WL 5990124, at *2 (W.D. Pa. Nov. 30, 2012) (finding $300 to be a reasonable hourly rate in 2012 in the Western District of Pennsylvania for an experienced employment law attorney).  Finally, the Court finds $100 a reasonable hourly rate for an administrative assistant.  *See Wilson v. Advanced Urgent Care, P.C.*, No. 4:16-CV-00214, 2018 WL 1315663, at *3 (M.D. Pa. Mar. 14, 2018) (finding $90 to be a reasonable rate for a paralegal); *J & J Sports Prods., Inc. v. Thomas*, No. CIV.A. 10-7051, 2011 WL 3156765, at *3 (E.D. Pa. July 26, 2011) ("The rates charged by Mr.

---

[1]  The Court declines to consider the "Laffey Matrix" of fees submitted with Mr. Riley's declaration, which, to the extent it is at all applicable, would appear to be limited to fees in the Washington, D.C. market for, at the latest, the years 2013-14.  *See* Riley Decl., Ex. 2; *see also J&J Sports Prods., Inc. v. Ramsey*, No. CV 17-1942, 2017 WL 4287200, at *3 (E.D. Pa. Sept. 27, 2017) ("We do not rely upon the Washington D.C. survey of reasonable fees from 2003-2014 attached to Plaintiff's motion."), *aff'd*, 757 F. App'x 93 (3d Cir. 2018).

Riley's administrative assistant, $75 per hour, and his paralegal, $150 per hour, are also reasonable.").

With respect to costs, J & J seeks $650 for "Investigate Expense;" $28.18 for "Courier Charges;" $400 for the "Complaint Filing Fee;" $31.10 for "Photocopies Charges;" $95.00 and $35.00 for "Service of Process Fees;" and an additional $150.00 for a "Sheriff Service Fee." Riley Decl., Ex 1 at 4. The Court is satisfied with the documentation provided by counsel and will award the costs sought, with the exception of "Courier Charges" and "Photocopies Charges." There is no documentation to support either request. *See Yudenko v. Guarinni*, No. CIV. A. 06-CV-4161, 2010 WL 2490679, at *2 (E.D. Pa. June 15, 2010) ("Where the prevailing party does not provide an itemized description of the copying, courts have disallowed or reduced the photocopying costs because they were unable to determine whether the costs were necessary."). The total award of costs will therefore be reduced by $28.18 (courier charges) and $ 31.10 (photocopy charges).

For the above reasons, the Court awards J & J attorneys' fees in the amount of $5,976.00, and costs in the amount of $1,330.00.

## III. MOTION TO ALTER OR AMEND JUDGMENT

J & J challenges this Court's award of $3,000 in statutory damages and $1,000 in enhanced damages on several grounds. First, J & J challenges the Court's conclusion that statutory damages under 47 U.S.C. § 553 "should be calculated based solely on an estimate of actual damages, without considering deterrence," Def. Judg. Opn. at 8, because, it argues, that conclusion renders the "actual damages" provision of Section 553 superfluous, *see* Mem. to Amend. at 2-4. Even assuming that statutory damages should approximate actual damages, J & J contends that its "actual" damages include more than the $3,000.00 sublicense fee—the basis for

the Court's award. *See id*. at 5-6. J & J also contends that the $1,000 award of enhanced damages is not an effective deterrent, and requests, at a minimum, a five-figure enhanced damages award. *See id*. at 6-8.

### A. Legal Standard

A motion to alter or amend a judgment pursuant to Federal Rule of Civil Procedure 59(e) is, in effect, a motion for reconsideration. "Motions for reconsideration under Federal Rule of Civil Procedure 59(e) serve primarily to correct manifest errors of law or fact in a prior decision of the court." *York Int'l Corp. v. Liberty Mut. Ins. Co.*, 140 F. Supp. 3d 357, 360 (M.D. Pa. 2015) (citing *United States v. Fiorelli,* 337 F.3d 282, 288 (3d Cir. 2003)). As such, a motion for reconsideration under Rule 59(e) "must rely on one of three grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice." *Durst v. Durst*, 663 F. App'x 231, 237 (3d Cir. 2016). "Reconsideration of a judgment is an extraordinary remedy, and courts should grant such motions sparingly." *York Int'l Corp.*, 140 F. Supp. 3d at 361 (citing *D'Angio v. Borough of Nescopeck,* 56 F. Supp. 2d 502, 504 (M.D. Pa. 1999)). Indeed, "[a] district court should be 'loathe to [revisit its earlier decisions] in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would make a manifest injustice.'" *Durst*, 663 F. App'x at 237 (quoting *Lesende v. Borrero*, 752 F.3d 324, 339 (3d Cir. 2014)).

### B. Application to J & J's Motion

The Court first addresses whether its determination that "statutory damages" should approximate "actual damages" (and without any consideration of deterrence) constituted a clear error of law, as J & J contends. After a review of the applicable case law, the Court finds that its conclusion as to how statutory damages should be determined did not constitute clear error.

There are two things immediately obvious from J & J's motion for reconsideration that support—indeed, mandate—this conclusion. First, J & J has not cited a single case from this district in which a court has laid out an alternative method of determining the level of statutory damages from the method utilized by this Court and other courts in this district. Second, and relatedly, J & J affirmatively concedes that the method used by this Court is consistent with the method used by other courts in this district. *See* Mem. to Amend. at 4 n.1 (stating that "[i]n the Eastern District" statutory damages and actual damages "have effectively become synonymous"). The Court declines to restate in general why this method is legally sound, and will limit its treatment here of the method of determining statutory damages to the arguments raised by J & J.

Before addressing J & J's argument that the current approach to determining statutory damages "conflates" the two types of damages, rendering one or the other "superfluous," the Court first observes what J & J concedes: the vast weight of caselaw in this Circuit makes clear that "statutory damages should be based solely on the estimated value of the services stolen, without consideration of other harms . . . or of other policies favoring deterrence." *Joe Hand Promotions, Inc. v. Yakubets*, 3 F. Supp. 3d 261, 275 (E.D. Pa. 2014) (quoting *Charter Commc'ns Entm't I, DST v. Burdulis,* 460 F.3d 168, 181 (1st Cir. 2006)); *see, e.g.*, *J&J Sports Prods. v. Kitsios*, No. CV 16-04881, 2018 WL 2461896, at *2 (E.D. Pa. June 1, 2018) ("Courts in this district have held that 'statutory damages under § 553(c)(3)(A)(ii) should be calculated based solely on an estimate of actual damages, without considering deterrence.'" (quoting *Yakubets*, 3 F. Supp. 3d at 276)); *J & J Sports Prods., Inc. v. Smalls*, No. CV 16-4883, 2017 WL 4680612, at *3 (E.D. Pa. Oct. 18, 2017) ("[S]tatutory damages should approximate actual damages."); *J & J Sports Prods., Inc. v. Edrington*, No. CIV.A. 10-3789 CCC, 2012 WL 525970,

at *4 (D.N.J. Feb. 16, 2012) ("Plaintiff asserts that it suffered at least $2,200 in actual damages, based on the amount that Defendants would have paid to legitimately purchase the right to commercially exhibit the Pacquaiao Event. The Court is satisfied that this an appropriate amount of statutory damages . . . . As such, the Court will award Plaintiff $2,200 in statutory damages."). Consequently, rather than committing clear error, this Court's decision to determine statutory damages as an approximation of actual damages was based on and is consistent with the current state of the law in this jurisdiction.

Turning to J & J's primary argument regarding "statutory damages," the logic underpinning this argument—*i.e.*, calculating "statutory damages" in a way that approximates "actual damages" is erroneous because it renders the "actual damages" provision superfluous— misapprehends the relationship between the two types of remedies. Commenting on Judge Pratter's decision in *Joe Hand Promotions, Inc. v. Yakubets*, 3 F. Supp. 3d 261 (E.D. Pa. 2014),[2] Judge Schiller, of this district, recently observed as follows:

> Judge Pratter determined that the most sensible reading of [47 U.S.C. § 553(c)(3)(A)] is that the statutory damages provision simply provides plaintiffs with an alternative route of recovery where actual damages are difficult to prove— meaning statutory damages should approximate actual damages. The Court agrees with Judge Pratter's analysis.

*Smalls*, 2017 WL 4680612, at *3. This Court also agrees. As Judge Pratter pointed out, "the actual damages provision requires the aggrieved party to '*prove* . . . the violator's gross revenue' from the violation; the statutory damages option, of course does not." *Yakubets*, 3 F. Supp. 3d at 277 (emphasis in original) (citations omitted). As a result, "[t]he statute's language and structure suggest that statutory damages are an alternative to actual damages because of the difficulty

---

[2] Judge Pratter's analysis of Section 553 statutory damages is scholarly and exhaustive, and the Court refers the parties to that decision.

of *proving* actual damages." *Id*. (emphasis in original). Therefore, that both statutory and actual damages provide a method of making an injured plaintiff whole is not problematic when the burden of proof associated with actual damages is considered. Simply because they are "alternative" remedies does not mean they cannot serve the same or similar remedial purpose; indeed, the opposite would seem to be necessary. *See Joe Hand Promotions, Inc. v. Waldron*, No. CIV. 11-849, 2013 WL 1007398, at *6 (D.N.J. Mar. 13, 2013) ("The fact that these two avenues of recovery are presented as alternatives to one another suggests to the Court that they should serve a similar purpose. Thus, since recovery of actual damages by its nature serves only a compensatory function, the statutory damages award should do likewise.").

Finally, assuming for the purpose of argument the correctness of J & J's contention that there "must be some distinction from the actual damages statute to make statutory damages an 'alternative,'"[3] Mem. to Amend. at 4, it is unclear what else a court should or even could consider when determining statutory damages, beyond either (i) the actual damages suffered, or (ii) deterrence. Nor does J & J attempt to answer this question. Since it is more than clear from the cases cited above that "deterrence" is not an appropriate consideration with respect to statutory damages, a court is left with one guidepost: an approximation of actual damages suffered.

J & J next argues that, assuming statutory damages should approximate actual damages, its "actual" damages include more than the $3,000.00 sublicense fee. *See* Mem. to Amend. at 5-6. In support of this, J & J cites the affidavit of its president, Joseph Gagliardi, submitted with J

---

[3] As discussed above, this contention is incorrect in that it misunderstands the relationship between the different remedies. Specifically, it incorrectly assumes that statutory and actual damages must serve different purposes, which is not the case. Moreover, the statement is simply incorrect on its face—there actually *is* a "distinction" that differentiates statutory and actual damages: the burden of proof required to award actual damages.

& J's initial motion for default judgment.  *See* ECF No. 14-2.  However, this affidavit is primarily concerned with the technology behind encryption and piracy of television signals.  Where Mr. Gagliardi does reference damages, he states only that "the unchecked activity of signal piracy . . . has resulted in our company's loss of several millions of dollars of sales revenue," and as a result he seeks the "maximum allowance for statutory damages."  *Id*. ¶¶ 12, 14.  Even if the Court were amenable to approximating actual damages using figures other than the cost of the licensing fee (in the absence of any other evidence of damages),  Mr. Gagliardi's affidavit provides no basis for what additional figures the Court should consider.  Moreover, similar to its challenge to the method of determining statutory damages, J & J fails to point to any case where, in the absence of evidence of damages beyond the lost revenue of the licensing fee, a court considered additional factors to increase an award of statutory damages.  The Court is therefore not persuaded by J & J's argument on this point.

Lastly, J & J argues that the enhanced damages awarded—$1,000—is not an effective deterrent, and the award of enhanced damages should be increased, at a minimum, to a "low five figure" amount, or $10,000.  Mem. to Amend at 7-8.  The Court declines to alter the enhanced damages in this case.  An award of enhanced damages based not on a "multiplier," but on factors such as (1) whether there is evidence of repeated piracy, (2) whether the defendant reaped substantial profits from the piracy, (3) whether the plaintiff suffered significant actual damages, (4) whether the defendant advertised its intent to broadcast the event, and (5) whether the defendant levied a cover charge, was reasonable and is supported by a long line of cases.  *See, e.g., J&J Sports Prods., Inc. v. Ramsey*, No. CV 17-1942, 2017 WL 4287200, at *3 (E.D. Pa. Sept. 27, 2017), *aff'd*, 757 F. App'x 93 (3d Cir. 2018); *Joe Hand Promotions, Inc. v. Michelina Enterprises, Inc.*, No. 3:16-CV-01880, 2017 WL 3581674, at *4 (M.D. Pa. Aug. 18, 2017); *J & J*

*Sports Prods., Inc. v. Hackett*, 269 F. Supp. 3d 658, 666 (E.D. Pa. 2017); *Joe Hand Promotions, Inc. v. Waldron*, No. CIV. 11-849, 2013 WL 1007398, at *8 (D.N.J. Mar. 13, 2013). Nor was the Court's application of these factors to the Defendants' conduct unreasonable or inconsistent with J & J's allegations. As a result, the Court discerns no error, let alone clear error, in its award of enhanced damages.

**IV.   CONCLUSION**

For the foregoing reasons, J & J's motion for attorneys' fees and costs is granted, in part, and its motion for reconsideration is denied.

An appropriate Order follows.

BY THE COURT:


*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Court